UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**BRIAN S. CROSS,**

    **Plaintiff,**

v.                                                          Case No. 8:08-cv-1542-T-TBM

**MICHAEL J. ASTRUE,**
**Commissioner of the United States**
**Social Security Administration,**

    **Defendant.**
                                    /

## O R D E R

The Plaintiff seeks judicial review of the denial of his claim for Social Security disability benefits and Supplemental Security Income payments. For the reasons set out herein, the decision is affirmed.

I.

Plaintiff was forty-seven (47) years of age at the time of his administrative hearing in February 2008. He stands 5'3" tall and weighed 120 to 125 pounds. Plaintiff has a ninth-grade education. His past relevant work was as a piano builder and tuner. Plaintiff applied for disability benefits and Supplemental Security Income payments in May 2005, alleging

disability as of January 1, 2001, by reason of back and leg problems.[1] The Plaintiff's applications were denied originally and on reconsideration.

The Plaintiff, at his request, then received a *de novo* hearing before an Administrative Law Judge ("ALJ"). The Plaintiff was represented at the hearing by counsel and testified in his own behalf. In essence, Plaintiff testified that he has been unable to work since an automobile accident on January 5, 2006. He has problems with his legs and is losing his ability to walk. He attributes his problems to an underlying disease known as spastic paraparesis the symptoms of which he claims were brought forth when he was hit by a car at a high rate of speed. He complains of experiencing pain in his neck, back, and legs, but denies taking any pain medication stating he does not have a doctor who could prescribe the medication at this point. By his account, he was prescribed hydrocodone following his accident and he overdosed, so he would rather just "deal" with the pain now. Plaintiff had been taking Prozac for depression for the past three to four months, and it has helped his symptoms a little. He denies any side effects from the medication. He testified that he has no energy, "no get up and go."

Plaintiff had been a piano tuner and builder since 1978. He has not had any other relevant work for the past fifteen years. He complained that he had no equilibrium when he stands, is unable to move around, and cannot push pianos around because of the weight of them and trying to balance them. He has been using a cane to help him walk since shortly after the accident. The cane helps him balance and keep his equilibrium; it was not prescribed

---

[1]At the administrative hearing, Plaintiff's date of onset of disability was amended to January 5, 2006, the date of his motor vehicle accident.

by a doctor.  He testified he has problems sitting because his legs tend to get numb.  While he is able to lift ten pounds, he cannot do so repeatedly throughout the day.  He cannot carry the weight in front of him because he will lose his balance and fall forward.  Plaintiff testified that he would not be able to perform a sedentary job that would allow him to sit the entire day and not require much lifting because he would not be able to sit all day.

Plaintiff is left-hand dominant.  He has a driver's license and drives to the grocery store two to three times per week.  He does not have a military background and has no vocational training.  He completed the ninth grade in school and never received a General Equivalency Diploma.  At the time of the administrative hearing, Plaintiff weighed approximately 125 pounds which is ten to fifteen pounds less than his normal weight.  He testified that he has been slowly losing weight over the last couple years and attributes the loss to his not moving around as much.

He spends his free time watching television and at church which he attends twice a week.  He tries to stay mobile to relieve his pain, but then has to lie down.  He has difficulty sleeping because of either spasticity or restless leg.  Plaintiff testified he only sleeps on average four hours per night and rests or sleeps most part of the day.  Plaintiff is single and lives by himself.  At this point, he is able to care for his own personal needs, but his twenty-three-year-old son helps on weekends with taking care of the yard and cleaning up the house. (R. 218-228).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are set forth herein as necessary. Plaintiff's date last insured was June 30, 2006.

By his decision of March 27, 2008, the ALJ determined that while Plaintiff has severe impairments related to degenerative disc disease of the lumbar spine, he nonetheless had the residual functional capacity to perform medium exertional work.[2] Upon this finding, the ALJ concluded that Plaintiff could perform his past relevant work as a piano tuner as such work is generally performed. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 10-17). The Appeals Council denied Plaintiff's request for review.

II.

In order to be entitled to Social Security disability benefits and Supplemental Security Income payments a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

---

[2] The ALJ found that Plaintiff's medically determined depression was not severe.

4

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

III.

The Plaintiff raises two claims on this appeal. As stated by the Plaintiff, they are as follows:

(1) The Commissioner erred as a matter of law in failing to give the Plaintiff's treating sources controlling weight pursuant to Social Security Ruling 96-2P; and

(2) The Commissioner also erred in failing to consider the Plaintiff's condition as a whole and to fully and fairly develop the record.

By his first argument, Plaintiff alleges that the ALJ failed to give any weight to the opinion of the treating physician, Dr. Greenberg, that Plaintiff was not capable of returning to his past work as a piano tuner. He urges that where, as here, medical evidence does not conclusively counter the treating physician's opinions and no other good cause is presented, the treating physician's opinion cannot be discounted. By his argument, the ALJ substituted his own opinion for that of the doctor's and he cherry-picked only those portions of the medical records that supported his conclusion. The medical record supported his claim of chronic pain and he urges that the ALJ's reasons for disregarding Dr. Greenberg's opinion ignores the later note from the doctor and thus lacked good cause. (Doc. 20 at 7-11).

In response, the Commissioner urges generally that Plaintiff failed to prove his disability claims. He contends that because Dr. Greenberg's opinion that Plaintiff could no longer work as a piano tuner was wholly conclusory, the ALJ did not have to accept it. In support, the Commissioner notes that the doctor's notes do not set forth any limitations. The Commissioner also urges that such opinions, like a claimant's residual functional capacity or whether a claimant is disabled, are not medical opinions entitled to deference. Additionally, he argues that for purposes of DIB, Plaintiff had to establish that he was disabled as of June 30, 2006. In conclusion, the Commissioner argues that the substantial evidence supports the ALJ's finding that the Plaintiff has the RFC to perform a full range of medium work and supports the ALJ's decision that Plaintiff was not disabled. (Doc. 21 at 3-11).

Plaintiff is correct that when considering a treating physician's testimony, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the contrary. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Such a preference is given to treating sources because such sources are likely to be best situated to provide a detailed and longitudinal picture of the medical impairments. *Lewis*, 125 F.3d at 1440. Furthermore, the ALJ must specify the weight given to the treating physician's opinion or reasons for giving the opinion no weight, and the failure to do so is reversible error. *MacGregor*, 786 F.2d at 1053. Good cause for rejecting a treating source's opinion may be found where the treating sources's opinion was not bolstered by the evidence, the evidence

supported a contrary finding, or the treating source's opinion was conclusory or inconsistent with his or her own medical record. *Phillips*, 357 F.3d at 1240-41 (citing *Lewis*, 125 F.3d at 1440); *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). In this circuit, where the Commissioner has ignored or failed properly to refute the treating physician's testimony, such testimony, as a matter of law, must be accepted as true. *MacGregor*, at 1053.

The medical record from Dr. William R. Greenberg, M.D., reveals that he first saw Plaintiff on January 18, 2006, for a neurological consult after a motor vehicle accident on January 6, 2006. Dr. Greenberg noted that Plaintiff reported that much of his symptomatology had gradually resolved and he had been able to return to work as a piano tuner. After completing a comprehensive examination, the doctor concluded Plaintiff had sustained a "closed head injury with gradual resolution." He noted his suspicion that his findings were preexisting with an underlying disease affecting the nervous system. He ordered an MRI of the brain. (R. 114-16). One week later, the doctor noted that from the cognitive standpoint, Plaintiff had resolved and the MRI of the brain revealed no abnormality. There were no complaints of headaches. There was "ongoing neck discomfort, a sense of tightness and aching." (R. 104). Dr. Greenberg suspected that Plaintiff had spastic paraparesis that had been slowly progressing and he suffered disc herniation in the cervical spine. He recommended a conservative approach to treatment. On his discussions with Plaintiff about his employment, the doctor noted, "I do not feel he can continue working as a piano tuner due to the necessity for the heavy lifting, pushing and pulling in that job." *Id.* The record also contains a follow-up report dated March 2007. At that time, Plaintiff complained of severe

back pain and an inability to return to his job as a piano tuner due to problems with lifting and moving heavy objects. There was no mention of neck pain. The doctor observed that the past imaging study of the brain was normal and that the cervical and lumbar spine demonstrated small disk herniations but no evidence for intrinsic cord abnormalities. (R. 91-92).

By his decision, the ALJ purportedly gave great weight to Dr. Greenberg's opinion, however, the decision reflects that he overlooked the express statement by Dr. Greenberg that Plaintiff could not continue working as a piano tuner due to the necessity for the heavy lifting, pushing, and pulling in that job. This is a significant finding and one that should have been addressed by the ALJ. However, even if I were to accept the statement as true, there is no cause for ordering a remand in this case in light of the ultimate conclusion by the ALJ. The doctor's opinion was clearly made in relation to Plaintiff's work as he described it. Had the ALJ gone on to determine that the Plaintiff could return to his former work as he claimed to have performed it, the suggested reversal would be required. However, the ALJ here otherwise fairly assessed the clinical findings from Dr. Greenberg as well as Plaintiff's other doctors and reached the conclusion that Plaintiff could still perform the work of a piano tuner as such is generally performed in the national economy (rather than as he formerly had performed the work). Whereas the former work purportedly involved lifting up to 300 pounds, the job type identified by the ALJ was light exertional work in accordance with § 730.361-010 of the Dictionary of Occupational Titles. Thus, even assuming error in the ALJ's failure to address the particular statement, I am obliged to conclude that it makes no difference to the ultimate conclusion in this case. Here, the ALJ recognized that Plaintiff

could not work as he had done before, but he nonetheless could do the more restricted work of tuning pianos. Neither at the hearing, nor on this appeal, does Plaintiff demonstrate limitations so great as to prevent him from performing this type work.

By his second claim, Plaintiff urges that the ALJ erred by not recognizing his neck pain and headaches as "severe" impairments. This prevented the ALJ from considering his condition as a whole and as a consequence, he urges that the ALJ's residual functional capacity ("RFC") assessment is deficient. In factual support, he cites the MRI of his cervical spine dated January 12, 2006, which revealed herniations at multiple levels. The films, coupled with his constant complaints of cervical pain and Dr. Moskovitz's note of February 9, 2006, regarding a decrease in cervical range of motion, suggest Plaintiff was fully credible. He urges that the fact that he was a candidate for surgery but chose not to have surgery was no basis for discounting his credibility since there is no indication in the record as to whether he opted for conservative treatment based on lack of financial means, health insurance, or at the recommendation of another physician. Finally, he contends the ALJ failed to address how his chronic headaches would affect his ability to maintain concentration, persistence, and pace.

In response, the Commissioner argues that Plaintiff fails to show that the ALJ's alleged error in failing to develop the record resulted in clear prejudice or unfairness such that a remand is warranted. While Plaintiff argues that the ALJ should have found limitations resulting from his chronic pain and headaches, the Commissioner alleges that Plaintiff failed to cite to any doctor's opinion that gave him any such limitations. It is Plaintiff's ultimate responsibility to prove his disability and to furnish medical or other evidence regarding his

impairments. The Commissioner urges that the ALJ's decision specifically discusses the emergency room records of January 2006, as well as the notes of Dr. Moti, Dr. Greenberg, and Dr. Moskovitz, and significantly, that no doctor assessed Plaintiff with any limitations. The Commissioner urges that the ALJ's decision reflects that he considered all the evidence in reaching his conclusion that Plaintiff was not disabled and in assessing Plaintiff's credibility, and thus his decision must be affirmed where, as here, it is supported by substantial evidence in the record.

It is well-settled that the ALJ has a basic duty to develop a full and fair record.[3] *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). This obligation exists whether or not the claimant is represented by counsel. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). However, case law in this circuit requires the Plaintiff to show some prejudice before a remand to the Commissioner for further development is ordered. *See Graham*, 129 F.3d at 1423. In considering whether a remand is required, the court should be guided by whether there are evidentiary gaps in the record that result in unfairness or clear prejudice. *Id*. It is likewise well settled that the ALJ must consider each impairment, as well as the combined effect of all a claimant's impairments and make well articulated findings as to the effect of the combined impairments. 42 U.S.C. § 423(d)(2)(B); *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986); *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984); *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987). By

---

[3]Nonetheless, it is the claimant's burden of proving that she is disabled, and she is responsible for producing evidence in support of her claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(a), (c)).

my review, a fair reading of the decision reflects the ALJ's compliance with the applicable standards.

As a starting point, it is simply incorrect that the ALJ ignored Plaintiff's complaints of neck pain or headaches and improperly failed to find any limitations in connection therewith. As the decision reflects, the ALJ reviewed all of the medical records including the objective evidence and in so doing expressly noted Plaintiff's complaints of neck pain and headaches. By the ALJ's assessment, Plaintiff's post-accident complaints, including his headaches, largely resolved in a relatively short time. Upon my review, the medical record supports that conclusion. Furthermore, Plaintiff makes no showing from the medical record that his headaches had any significant impact on his functional capacity.[4] As for the Plaintiff's neck pain, there is objective evidence revealing a number of conditions in Plaintiff's cervical spine, but these conditions were identified by the ALJ, and the claim to the contrary is simply incorrect. Furthermore, the ALJ considered and assessed certain limitations arising from the neck impairment as evidenced by his statement that he "has reduced the claimant's residual functional capacity to medium in light of the claimant's neck injury, . . ." (R. 15). While I find it inconsistent that the ALJ would reduce the Plaintiff's RFC to medium work on the basis of the neck injury but not specifically identify the neck injury as "severe,"

---

[4] It is worth noting that Plaintiff did not claim to be disabled by reason of headaches either in his administrative filings or in his testimony before the ALJ, where he claimed he could not work because of neck, back, and leg pain. It is also worth noting that the Plaintiff was represented at the hearing by counsel who had a full opportunity to address these matters and develop the record which new counsel now criticizes. As the transcript from the hearing indicates, no claim was made that the headaches affected his concentration or cognitive functions.

12

the failure to find the impairment severe is, in and of itself, not reversible error. *See Jamison v. Bowen,* 814 F.2d 585, 588 (11th Cir.1987) (noting that, ". . . the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement at step two."). More pertinent is whether the ALJ considered the impairment and adequately assessed the functional limitations resulting from the neck and other impairments. Clearly, the condition in Plaintiff's entire spine was considered by the ALJ. While Plaintiff urges the RFC assessment was deficient, he fails to demonstrate why this is so. As the Commissioner urges, none of Plaintiff's doctors placed any specific limitations on him. In the circumstances, it was left to the ALJ to weigh the evidence and conclude Plaintiff's RFC. Upon my review, I am obliged to conclude that there is substantial evidence to support the ALJ's assessment.

Plaintiff also complains that the ALJ erred in discounting his neck pain because he failed to have surgery. However, by my consideration, even if the ALJ lacked a sufficient factual basis to support such a conclusion as a basis to discount the pain complaints, the ALJ otherwise stated adequate reasons for not fully crediting the subjective claims. As the ALJ noted, Plaintiff had worked for twenty years with back pain. He continued to do so, with back and neck pain, after the accident. In January 2006, he reported to Dr. Moti that he had experienced occasional back pain and no neck pain prior to the accident. Thereafter, in reports to Dr. Greenberg, he noted that his symptoms had mostly resolved. Dr. Greenberg recognized the neck impairment, yet he recommended only conservative care. In the last note

13

from Dr. Greenberg, there is no mention of neck pain. Under the applicable standard in this circuit, where an ALJ decides not to credit a claimant's subjective testimony, the ALJ must articulate specific and adequate reasons for doing so or the record must be obvious as to the credibility finding. *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995); *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991). Here, the ALJ fairly assessed the medical record, including the clinical and objective findings to conclude that Plaintiff was limited by pain but not to the degree claimed. When read as a whole, the decision sets forth adequate reasons in support of this conclusion.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence. The decision is affirmed. Accordingly, the Clerk is directed to enter Judgment in favor of the Defendant and to close the file.

**Done and Ordered** at Tampa, Florida, this 27th day of July 2009.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record